UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD GRISAFI, on behalf of himself and the Putative Class<br><br>        Plaintiff,<br><br>        v.<br><br>SONY ELECTRONICS INC.<br><br>        Defendant. | Case No.<br><br><br>        Civil Action<br><br>CLASS ACTION COMPLAINT<br>AND JURY DEMAND |

Plaintiff, by his attorney, Nagel Rice LLP, on behalf of himself and all others similarly situated, make the following allegations on personal knowledge and information and belief:

## I.    IDENTIFICATION OF PARTIES
(Local Rule 10.1)

1.    The names and addresses of the named parties to this action are (i) Richard Grisafi, 47 Rose Avenue, Woodcliff Lake, New Jersey 07677; and (ii) Sony Electronics, Inc., 16530 Via Esprillo, San Diego, California 92127.

## II.   NATURE OF THE ACTION

2.    Plaintiff brings this action on behalf of himself and all similarly-situated individuals (the "Class") and entities who purchased the Sony Dash, a personal internet viewer manufactured by Sony Electronics, Inc. ("SONY").

3.    All of the claims asserted herein arise out of SONY's decision to unilaterally and without recourse cut off its support of the SONY Dash (the "Dash") and terminate its functionality as

1

of July 2017 through a forced firmware update which resulted in the device being "bricked."[1] As many disgruntled purchasers have posted on the internet, they are left with a paperweight, which cost between $100 and $200.

4.    Consumers would not have purchased a SONY Dash if they knew that within just a few years of purchase SONY would choose to stop supporting the product because SONY did not want to maintain the servers for this product forcing its customers to download firmware that rendered the product useless.

5.    The SONY Dash was only functional for a commercially unreasonable time.

6.    SONY omitted material information regarding its intention to prematurely render the Dash obsolete from its marketing, advertising, and sale of the SONY Dash.

7.    Many owners of the Dash have complained in public forums and to SONY about the bricking of the product, and have requested that SONY address and remedy the problem by providing a refund or equivalent replacement. SONY has failed to offer a refund or replacement that performs the functions SONY promised that the Dash would perform or provide a product of equivalent value.

---

[1] Bricking is a term commonly used in the electronics industry when updating a piece of hardware with a software update that renders the hardware useless after the update. See https://www.urbandictionary.com/define.php?term=bricking.

8.   As a direct and proximate consequence of SONY's conduct Plaintiff Grisafi and the other members of the Class purchased and currently own a useless product and have been damaged thereby.

9.   Had Plaintiff and other members of the Class known of SONY's plan to brick the product after a few years of its introduction to the marketplace they would not have bought a Dash, or would have paid substantially less for them.

10.   Plaintiff and the Class seek actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to Plaintiff and the Class.

### III. PARTIES

11.   Plaintiff, Richard Grisafi, is a New Jersey citizen who resides in Woodcliff Lake, New Jersey 07677.

12.   Defendant, Sony Electronics, Inc., is a subsidiary of Sony Corporation of American, with offices in Park Ridge, New Jersey and a headquarters at 16530 Via Esprillo, San Diego, California 92127.

13.   At all relevant times, Defendant was engaged in the business of marketing, advertising, distributing, selling, and warranting Electronic products, including the SONY Dash, in New Jersey and throughout the United States of America.

### IV. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331. This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), as the Class contains more than 100 members, at least one of whom maintains citizenship in a state diverse from Defendant, and seeks in the aggregate more than Five Million Dollars ($5,000,000.00), exclusive of costs and interest.

15. Defendants are amenable to personal jurisdiction in New Jersey. A substantial portion of the wrongdoing alleged to have occurred took place in New Jersey, and SONY conducts business within the state to be sufficient to be considered present in New Jersey.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Plaintiff Grisafi is a resident of this judicial district, a substantial part of the events giving rise to the claims set forth herein occurred and emanated from this district, and Defendants' conduct has injured members of the Class residing in this district. Accordingly, this Court has jurisdiction over this action, and venue is proper in this judicial district.

## V. <u>FACTUAL BACKGROUND</u>

### A. <u>The SONY Dash and the Advertised Benefits of the Product</u>

17.   SONY first announced the Dash at the 2010 Consumer Electronics Show in Las Vegas where it was described as a "personal application viewer" featuring built in Wi-Fi, stereo speakers, a USB port, and a 7-inch touch screen.

18.   Brennan Mullin, SONY Electronics' senior vice president of the personal imaging and audio business touted the multiple uses for the Dash, stating, "With Dash, we're empowering consumers with a fun, interactive way to stay connected with their news, entertainment, interests and ultimately, their lives." Mullins indicated that, in addition to access to audio and video content from SONY 's Bravia Internet video platform which features YouTube, Pandora Internet radio, and others, the personal Internet viewer will have access to more than 1,000 free applications from Chumby Industries.

19.   The Dash, Model HID-C10, was first sold in late April 2010 at a list price of $199.  Online advertising touted the benefits of the SONY Dash, stating:

> Get information and entertainment in your bedroom, kitchen, or office, without being tethered to your PC 1,500+ apps available to deliver weather, traffic, social networking, movies, music, and more, 7-inch touchscreen with gesture support and WVGA (800x480) pixel resolution, 802.11b/g Wi-Fi to easily connect to your wireless home network 500Mhz processor with 32kB I/D L2 cache; 256 MB, 667MHz DDR2 DRAM.

20. SONY introduced two updated versions of the Dash hardware in September 2011. The HID-B7 and HID-B70 refreshed the hardware, with the HID-B70 adding a battery backup. This revision of the Dash device removed Netflix and YouTube streaming support. However, SONY's promotional materials touted the two new models as featuring:

> Enhanced real-time, customizable, information delivery to any room in the home
> Portability in HID-B70 model
> On-device registration for easy, PC-free set up and activation in minutes
> Basic Internet browser
> For portability, the HID-B70 Dash model now features a built-in lithium ion battery, so the device can be easily transported from room to room. It is also available in three colors: Brown, slate blue and orange.

21. All three models touted a seven-inch LCD measured diagonally color touch screen, and utilize a wireless Internet connection to deliver real-time information. With full alarm functionality and access to more than 1,000 free apps, including Facebook™, news, sports, webcams and more, SONY promised that its Dash device provides any room with a robust information alarm clock, which would serve as an internet viewer, among other functionalities.

22. SONY also indicated in promotional materials that "Users can also easily play back Internet radio, such as Pandora® and SHOUTcast®, via the built-in speaker or the headphone/audio output. Popular photo sharing services like Flickr®, Photobucket™

and SONY's Personal Space™ application are also quickly accessible."

23.  The initial retail price of the HID-B7 Dash model was available in black for $129.95.

24.  The HID-B70 Dash model was also available in brown, slate blue and orange for $169.95.

25.  On March 14, 2015 the SONY Dash stopped supporting all streaming content, including Netflix, Pandora, Slacker, and YouTube, although the device continued to authenticate with SONY and act as an alarm clock. However, this service apparently returned on April 24, 2015. Then, in April 2017, SONY announced that it "will no longer support dash devices and functionality will terminate" as of July 2017.

26.  Apparently the only reason SONY has stopped providing support to the SONY Dash was for financial reasons. Maintaining the servers needed for functionality of the Dash was not economical so SONY decided to simply brick the product, ignoring the promises made to the consumers who purchased this device.

27.  It is anticipated that SONY will attempt to rely upon certain language contained in the End User License Agreement ("EULA") which came inside the box of the SONY Dash unit. The EULA can only be reviewed after you purchase the Dash, bring it home and take it out of the box. This EULA contains a provision which states:

> **"From time to time, Sony, its Affiliates, Third Party Licensors or other third parties may automatically update or otherwise modify the Software, for example, but not limited to for purposes of error connection, improvement of features, and enhancement of security features. Such updates or modifications may change or delete the nature of features or other aspects of the Software, including but not limited to features you may rely upon. You hereby agree that such updates and modifications may occur at Sony's sole discretion, and that Sony may condition continued use of the Software upon your complete installation or acceptance of such updates or modifications."**

A copy of the EULA is annexed hereto as Exhibit A.

28. In July 2017, SONY released a firmware update, version 1.7.1604. Users were required to press "OK" which installed the update in order to get beyond the first screen. In other words, a user could not make use of the device without installing the update. When a user clicked "ok" and permitted the update to install it destroyed all functionality resulting in "bricking" the product.

29. This update did not "correct errors", "improve features", or "protect security". It did not merely "change or delete" features. Rather, it completely destroyed all functionality of the product. The firmware update exceeded SONY's authorization to install updates.

**Plaintiff's Experiences**

30.   On July 20, 2011, Plaintiff Grisafi purchased two SONY Dash units, both model HID-C10, from Amazon.com intending to give one of the units as a gift. He paid $104.96 each, not including taxes, shipping and gift wrapping.

31.   Grisafi had seen the Dash reviewed on several websites and was impressed with its versatility at the time. It was touted as a photo frame, internet radio, internet viewer, Facebook feed, Netflix, Hulu and YouTube viewer. It could also be used to check the weather report. With the promise that SONY would make 1,000 different "apps" available to purchasers, Grisafi jumped at the opportunity to purchase this product.

32.   After Grisafi received his first Dash, he immediately set it up and tried out the many features. He registered the product with SONY as required. Registration is necessary to permit the user to manage the dashboard remotely. Grisafi was able to add or remove Apps from his dashboard. For example, but not by way of limitation, he could choose a news feed or weather application and it would appear on the face of the clock. Grisafi put this first Dash purchased in his bedroom at his family's vacation house.

33.   Because he was so pleased with the first SONY Dash he purchased an additional HID-C10 for the apartment where he was living at the time.

34.   Less than a year later, he noticed the newest version
(HID-B70) was for sale on Woot.com for $79.99. He purchased this
model because it featured a backup battery which would function
during a power failure. He moved the HID-C10 he had to his living
room and replaced it with the HID-B70 which was next to his bed.
Within several months, he purchased another HID-B70D on eBay. Thus,
Grisafi ultimately purchased a total of five Dash units. Four were
registered to him and one was given as a gift.

35.   Grisafi noticed that Netflix, Hulu, YouTube, and other
streaming content ceased to function on March 15, 2015, at least
for a time. The Dash still functioned as a programmable alarm clock
and it could receive weather updates and news. The dashboard also
could still be managed on SONY's servers.

36.   Firmware version 1.7.1526 was released on March 24th,
2016 and Grisafi installed it successfully on the two HID-C10s he
had.

37.   Then on or about July 12th, 2017 SONY released firmware
version 1.7.1604. Grisafi received notice of the update via a
screen pop up which indicated that an update was available to
download. He was unable to opt out of the update. Since he had no
other option he touched "OK" and it downloaded and installed the
update. When the update completed the device restarted to a screen
that says "SONY" and the SONY light flashes at the bottom. That is
the only thing that Grisafi's SONY Dash was able to do after

10

installing the update; it had zero functionality. It could not power up and function normally, or even serve as an alarm clock, with or without dashboard app features. This is the definition of a device being "bricked."

38.   Grisafi's HID-B70 is still functioning as a passive alarm clock but it is apparent that SONY has shut down their servers. Thus, once that Dash experiences a power outage which results in its battery draining, it too will be rendered useless.

Dash Purchasers Complain

39.   Grisafi's experience with the SONY Dash is typical of all Sony Dash purchasers, as reflected by customer complaints. Since the forced firmware update numerous users have complained about SONY's bricking the product, shutting down the servers and failing to offer an appropriate remedy to individuals who purchased the SONY Dash. A small sampling of these complaints is as follows:

> Sony Dash another abandoned product turns into a brick
> I have used the Sony Dash products for years. It was a touch screen device that had apps. It worked well and since it was tied to Sony servers it turned into a brick today when Sony announced they will no longer support it. Boy that sucks. I have two perfectly working touch screen devices that won't do squat without the Sony servers. You think could have opened it up to let us use 3rd party services for weather and such.

> Sony could have opened up the hardware to not rely on Sony servers to keep it going. Total BS what they did.

I have 3 that are bricked, and then there are all ones I've given to family and friends as gifts. Sony could have easily fixed the Dash to be a standalone device. The only reason it had to connect to the Sony servers was to download the control panel for apps. The clock, alarm clock, accuweather, picture viewer, and usb stick music player functions were already imbedded into the firmware/software. The clock time and weather was retrieved from the internet, not Sony. All Sony needed to do was provide a firmware/software update that removed the control panel along with a few other functions, and rewrite it to eliminate server authorization, and connect to the users internet to collect time and weather information. At least it would still function as a bedside alarm clock with auto dimmer and weather information that would play pictures and music from a USB stick. What Sony did was atrocious, and so environmentally irresponsible. I can't image how many of these things are going into the trash all around the world over the next few days.

http://www.dslreports.com/forum/r31509480-Sony-Dash-another-abandoned-product-turns-into-a-brick

*1.0 out of 5 stars*It WAS a Great Clock-Until Sony Put it to Death
ByDavid S.on August 2, 2017
Package Type: Standard Packaging
Sony killed it with the latest update. My clock no longer works, and they no longer support it. DO NOT BUY!

RIP HIDC10.
*1.0 out of 5 stars*Device no longer supported
ByNoah Tallon July 23, 2017
Package Type: Standard Packaging
As of July 2017 Sony has disabled this device it no longer functions. Do not buy!

*2.0 out of 5 stars*I miss you ... WAS the Best Alarm Clock EVER

12

ByAmazon Shopper Joeon July 17, 2017
Package Type: Standard Packaging
This WAS a 5 STAR device until Sony decided to
kill it. i LOVED this thing... sort of a friend
to tell you the weather and such. It was just
soo nice. But then Sony sent an "update" makes
it totally non-operational (even as an alarm
clock not functional). Instead the screen says
Sony and the light that says Sony beneath it
blinks. As noted in other reviews, just call
(239) 245-6374 Sony will offer you a clock
radio or a BT Speaker with your Dash's serial
number..... and a picture showing the model
and serial number... when you email them. The
clock offered to me was the ICF-C1 and the
speaker was SRS-XB10. I had paid $200 for my
Dash... hardly seems fair. I am very unhappy
for Sony pulling the plug. I am hoping that
someone from the CHUMBY community finds a way
to port either the CHUMBY system or someone
finds a way to put an ANDROID system on this
and brings it back to life. I would pay good
money if someone could bring life back to this
device. It has a certain cult following as the
worlds best alarm clock. Amazon... if you are
listening... here is a HUGE nice opportunity
for you to adapt your brand new Amazon Echo
Show to replace this old but loyal following
of Sony Dash folks upset with Sony and looking
for a new 'device' that welcomes them away
every day.

*1.0 out of 5 stars*Brilliant strategy. Now I
will never bay anything sony
ByQuality Countson July 16, 2017
Package Type: Standard Packaging
Thanks   SONY   for   abandoning   your   Dash
customers.   Brilliant   strategy.   Now   I   will
never buy anything "sony." AMAZON SHOULD BAN
THEIR PRODUCTS AND STAND WITH US.
Comment|Was this review helpful to you?

*1.0 out of 5 stars*It was awesome until Sony
released   an   update   that   removed   all
functionality ...
ByMattPon July 15, 2017

13

Package   Type:   Standard   Packaging|Verified
Purchase
It was awesome until Sony released an update
that removed all functionality except the
alarm clock function. I bought two of these
and now they're pretty much useless.
Sony's support sucks for nearly every product
I've bought from them in the past. I have
stopped purcahing Sony products and I
recommend you do the same.

*1.0 out of 5 stars*Update appears covering most
of screen that you can't get rid of and when
you do update device is useless. Sony says it
has stopped supporting this item
ByFrankon July 15, 2017
Package   Type:   Standard   Packaging|Verified
Purchase
Beware this product. Update appears covering
most of screen that you can't get rid of and
when you do update device is useless. Sony
says it has stopped supporting this item.
Support said you can call and get an alarm
clock .

https://www.amazon.com/Sony-HIDC10-Personal-Discontinued-Manufacturer/product-reviews/B00375MPA8/ref=cm_cr_dp_d_ttl?ie=UTF8&reviewerType=all_reviews&sortBy=recent#R1SDCZWQ

## VI. <u>RULE 9(b) ALLEGATIONS</u>

40. Plaintiff makes the following specific fraud
allegations with as much specificity as possible absent access to
the information necessarily available only to SONY:

a.   Who:  SONY, including SONY's senior vice president of
the personal imaging and audio business, Brennan Mullin, concealed
the intention to shut down the servers and brick the Dash prior
to the end of its useful life in the event expected profits were
not realized from Plaintiff, the Class and Subclasses, and

everyone in the chain of distribution.  Plaintiff was unaware of, and therefore unable to identify, the true names and identities of all those individuals at SONY responsible for such decisions.

b.   What:  SONY knew, or had reason to know, at the time it sold the Dash, or was reckless in not knowing, the fact that SONY would shut down the servers and brick the Dash prior to the end of its useful life in the event expected profits were not realized rendering the Dash unable to perform its essential purpose before the end of its expected useful lives, within or outside the applicable warranty periods.

c.   When:  Beginning no later than January 2010, when Brennan Mullin, SONY's senior Vice President touted the benefits of the Sony Dash and then later when SONY temporarily stopped supporting streaming content in March 14, 2015 and began receiving consumer complaints about problems with the product. SONY concealed its intent to stop supporting the Dash until April 2017 when it advised that it would stop supporting the device and functionality as of July 2017. During these three months, SONY continued to sell the device to unknowing consumers.

d.   Where:  SONY concealed this material information in every communication it had with Plaintiff and the Class and Subclass until the April 2017 communication, which was made long after the unconscionably short limited warranty expired.

e.   How:   SONY concealed this material information by not disclosing it to Plaintiff, the Class, Subclasses or anyone in the chain of distribution at any time or place or in any manner, even though it knew this information about premature obsolesce and knew that it would be important to a reasonable consumer, and even though its omissions with regard to the SONY's intent to brick the dash and consequent premature failures of the dash were contrary to its representations about the device. Sony falsely represented on the box the Dash came in and in promotional material that the device would serve as an "internet viewer." This functionality was unreasonably short-lived.

f.   Why:   SONY concealed this material information for the purpose of inducing Plaintiff and Class and Subclass members to purchase the SONY dash at full price rather than purchasing competitors' similar products or paying SONY less for the dashes, given their limited and short-lived utility.  Had SONY disclosed the truth, Plaintiff and Class and Subclass members (and reasonable consumers) would not have bought the SONY dashes, or would have paid less for them.

## VII. TOLLING OF STATUTES OF LIMITATION

41.   SONY's active and knowing concealment of the intent to brick the dash and shut down the servers as soon as the product appeared not profitable by SONY since the product was first introduced in April 2010, and willfully false and misleading

16

statements regarding the multiple uses of the product as a personal application viewer, results in the tolling of any applicable statute(s) of limitation.

42.   Plaintiff and Class and Subclass Members could not have reasonably discovered SONY's true intentions until July 2017 when the device was bricked.

43.   SONY's active concealment of, and breach of its duty to disclose the truth about its intent to brick the SONY dash tolls any applicable statute(s) of limitations.

VIII. <u>CLASS ACTION ALLEGATIONS</u>

44.   Plaintiff brings this action on behalf of himself and all other persons similarly situated, pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

<u>The Nationwide Class</u>

45.   All persons or entities in the United States who own or have owned a SONY Dash as of July 2017.

<u>The New Jersey Subclass</u>

46.   All persons or entities in New Jersey who own or have owned a SONY Dash as of July 2017.

<u>Excluded from all Classes</u>

47.   Excluded from the Classes are: (a) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and

successors; (b) the judge to whom this case is assigned and any member of the judge's immediate family.

48. <u>Numerosity/Impracticability of Joinder/Ascertainability</u>:

The members of the Class are so numerous that joinder of all members would be impracticable. The Class is believed to include thousands of members. The Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased the Dash. Due to the fact that all purchasers had to register their Dash to enable them to access the servers, SONY has the contact information for each class member. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody, and control.

49. <u>Commonality and Predominance</u>: There are common questions of law and fact that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, include, but are not limited to, the following:

    a. Whether the SONY Dash was improperly bricked;

    b. Whether SONY violated the consumer protection laws in the New Jersey Consumer Fraud Act (hereinafter, the "CFA"), <u>N.J.S.A.</u> 56:8-1, et seq., and/or the consumer protection laws of other states.

    c. Whether SONY's conduct violates warranty laws, and other laws as asserted herein;

    d. Whether, as a result of SONY's omissions and concealments of material facts related to its intent to render the Dash useless prematurely, Plaintiff and the other members of the Class have suffered ascertainable losses, and whether Plaintiff and the other members of

18

the Class are entitled to monetary damages and/or other remedies, and if so the nature of any such relief;

e. Whether SONY's acts and/or omissions entitle Plaintiff and the other members of the Class to treble damages, attorneys' fees, prejudgment interest and cost of suit.

f. Whether the Consumer Fraud and Abuse Act was violated by SONY's acts.

g. Whether SONY's EULA violated the provisions of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("NJ TCCWNA") and Grisafi and the class are aggrieved consumers.

h. Whether SONY has committed trespass to chattels.

i. Whether SONY has been unjustly enriched through the sale of the SONY dashes.

50.   **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and the other members of the Class have suffered similar injury by the same wrongful practices by SONY. The claims of Plaintiff and the other members of the Class all arise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories.

51.   **Adequacy Of Representation**: Plaintiff will fully and adequately assert and protect the interests of the members of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with the members of the Class.

52.   **Superiority Of Class Action And Impracticability Of Individual Actions**: A class action is superior to all other

available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class are in the millions of dollars, and are no less than five million dollars, upon information and belief, the individual damages incurred by each member of the Class resulting from SONY's wrongful course of conduct are too small to warrant the expense of individual suits. The likelihood of individual members of the Class prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, SONY has acted or refused to act on grounds generally applicable to the members of the Class and, as such, final injunctive relief

or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

## IX. CLAIMS FOR RELIEF

### FIRST COUNT

### (Violation of the Computer Fraud and Abuse Act)

### (18 U.S.C. §1030 et seq.)

53. Plaintiff on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

54. This claim is brought on behalf of the Nationwide Class.

55. Grisafi's and the class members' SONY Dash units constituted protected computers within the meaning of the computer Fraud and Abuse Act, 18 U.S.C. §1030.

56. Defendant intentionally transmitted the firmware update version 1.7.1604 to all SONY Dash owners and did so in a manner that required that the Dash owners install the updates to get beyond the opening screen.

57. The updated software was intended to cause damage to the SONY Dash operating system so that the SONY Dash would be rendered nonfunctional, i.e. bricked.

58. SONY Dash owners did not provide SONY with authorization to access their SONY Dash units for purposes of destroying the functionality of the SONY Dash units.

59. The firmware/software update SONY intentionally transmitted to the SONY Dash in fact caused damage to it, resulting in a bricked product.

60. The firmware update damaged all SONY Dash units sold in the United States and caused aggregate damages in excess of $5,000.

SECOND COUNT

(Violation of the New Jersey Consumer Fraud Act)

N.J.S.A. § 56:8-2, et seq.)

61. Plaintiff on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

62. Plaintiff and the members of the class are consumers within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, or comparable statutes.

63. The New Jersey Consumer Fraud Act prohibits a person from engaging in any unfair practice, making any false, deceptive or misleading representation or omission with intent that others rely on it.

64. More specifically, this statute provides that: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon

such concealment suppression or omission, in connection with the sale or advertisement of any merchandise. . . or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . ."

65. Defendants engaged in unfair, false, deceptive and misleading practices in representing that it produced the SONY Dash to serve as a personal application and/or internet viewer which would utilize SONY's dedicated servers to operate and that SONY would stand behind the product for the anticipated useful life of the product.

66. In fact, SONY designed the product so that it could force a firmware update which would brick the product when it unilaterally determined that maintaining the servers needed to fulfill the advertised function of the SONY Dash was no longer profitable.

67. SONY's firmware update in fact caused the SONY Dash to brick on a date pre-determined by SONY enabling SONY to shut down its servers and wash its hands of the product long before the end of its anticipated and reasonable useful life.

68. SONY did not inform Plaintiff or the members of the Class that it had designed the product so that it had the ability to brick the product at will and concealed this fact from Plaintiff and the Class.

69. Plaintiff and the Class would not have purchased the SONY Dash if they knew that it would be bricked after owning it for just a few years.

70. Alternatively, Plaintiff and the class would have paid far less for the SONY Dash if they knew that its useable lifespan would have been deliberately shortened at the whim of SONY.

71. Defendant's unfair and deceptive conduct proximately caused Plaintiff and the Class to be injured and an suffer ascertainable loss.

## THIRD COUNT

### (Breach of Express Warranty)

72. Plaintiff on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

73. This claim is brought on behalf of the Nationwide Class of alternatively on behalf of the New Jersey subclass.

74. Although SONY provided all purchasers of the SONY Dash with a one year limited warranties with respect to the hardware and purported to disclaim all warranties regarding the software, this information was not disclosed to SONY Dash purchasers until they purchased the product and took it out of the box.

75. In actuality SONY made numerous express warranties to the plaintiff and the class based upon representations in its marketing materials and on its website and through its senior vice president,

Brennan Mullin. SONY warranted that the Dash would provide access to audio and video content from SONY's Bravia Internet video platform, would serve as a personal Internet viewer, and provide access to more than 1,000 free applications. These representations became part of the basis of the bargain.

76. Accordingly, SONY made express warranties under state law.

77. Plaintiff notified SONY of the breach and/or was not required to do so because affording SONY a reasonable opportunity to cure its breach of written warranty would have been futile. SONY was on notice of the breach of warranty well before Plaintiff began this litigation.

78. SONY has breached its express warranties, as set forth above, by rendering the product useless and unable to provide access to audio and video content from SONY's Bravia Internet video platform, serve as a personal Internet viewer, or provide access to more than 1,000 free applications and by failing to reactivate the servers or replace the product.

79. SONY has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and SONY's knowledge, SONY refuses to honor its warranty, even though it knows that it bricked the product.

80.   As a result of these breaches, the Plaintiff and Class Members sought repair or replacement of the SONY Dash but SONY denied them warranty coverage.

81.   Plaintiff has given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

82.   Defendant has failed to provide Plaintiff or the Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that SONY expressly warranted when it sold the SONY Dash to Plaintiff and the Class.

83.   The time limits in SONY's express warranty are commercially unconscionable.  SONY knew the Class Members would likely not discover that the DASH would be bricked until after the one year warranty period had expired.

84.   The Class Members had no meaningful opportunity to bargain over, let alone expand, the SONY Dash warranty terms. These warranties are classic adhesion contracts, produced by the manifest and massive differences between SONY's and individual Class Members' bargaining power, whose terms were uniform and uniformly of the "take it or leave it" variety.

85.   The Plaintiff and Class Members have complied with all of their obligations under the SONY warranties.  To the extent they have not, such compliance is excused by SONY's misconduct.

86. SONY's breach of its express warranties caused damages to the Class Plaintiffs and the Class.

## FOURTH COUNT

### (Breach of Implied Warranty)

87. Plaintiff on behalf of himself and all others similarly situated, incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

88. The SONY dash are "goods" under the Uniform Commercial Code ("UCC").

89. SONY is a "merchant" under the UCC.

90. SONY made numerous implied warranties to the members of the Class about the merchantable quality of the SONY Dash.

91. SONY impliedly warranted, among other things, that the Dash, was of good and merchantable quality, and would actually function as a personal internet viewer.

92. Through the conduct alleged herein, SONY has breached the implied warranty of fitness for a particular purpose. The Dash ceased to function due to SONY's deliberately bricking the product rendering them unfit for any purpose. The Class Members purchased the Dash for a particular purpose of being able to use the product as a personal internet viewer for its expected useful life. SONY knew that the Class Members were purchasing the Dash for this purpose and marketed the Dash for this particular purpose in advertising and on line.

93. Plaintiff and Class Members relied on Defendant's misrepresentations by purchasing the SONY Dash.

94. Defendant knew or had reason to know that Plaintiff and Class Members were influenced to purchase the SONY Dash by SONY's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

95. The SONY Dashes were not of merchantable quality and were not fit for their particular intended use because the Dashes were bricked long before the end of their expected useful life. Indeed, after only five years since purchase, Plaintiff was left with a useless product.

96. Defendant's actions, as complained of herein, breached their implied warranty that the SONY Dashes were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and § 2-315) and the common law of this State, as well as the common law and statutory laws of the other states.

97. Plaintiff and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty. In particular, Plaintiff and Class Members would not have purchased the SONY Dash had they known the truth about the planned obsolescence; nor would they have suffered the damages associated with these the complete loss of utility of the product.

## FIFTH COUNT

<u>(Breach of Written Warranty Under the</u>
<u>Magnuson-Moss Warranty Act, 15 U.S.C. § 230 *et seq.*)</u>

98.  Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

99.  This claim is brought on behalf of the Nationwide Class.

100. Plaintiff and other members of the Nationwide Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

101. SONY is a "supplier[]" and "warrantor[]" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

102. The SONY Dashes are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

103. SONY's express warranty is a "written warranty" within the meaning of 15 U.S.C. § 2301(6).

104. Under the Magnuson-Moss Act, SONY was obligated to disclose to consumers the intent to prematurely brick the SONY Dashes.

105. Under the Magnuson-Moss Act, SONY was obligated to repair or replace the bricked Dashes.

106. Despite reasonable opportunity to honor its disclosure and remedy obligations, SONY violated these obligations under the Magnuson-Moss Act, causing injury to the Class Plaintiffs and Class Members.

107. The amount in controversy with respect to the Class Plaintiff' individual claims meets or exceeds the sum or value of $25. There are more than 100 individuals in the Class. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

108. As a direct and proximate result of SONY's breach of written warranty, Plaintiff and other members of the Nationwide Class sustained damages and other losses in an amount to be determined at trial. SONY's conduct damaged Plaintiff and other members of the Nationwide Class who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as appropriate.

## SIXTH COUNT

### (Violation of the TCCWNA)

### (N.J.S.A. 56:12-15 et seq)

109. Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

110. As the choice of law question cannot be conclusively addressed at this point in the litigation, if it is later determined by the Court that the choice of law rules require the application of this State law based on Plaintiff's residence,

Plaintiff states this cause of action relates to the Plaintiff Grisafi, and the subclass of New Jersey State residents.

111. Plaintiff and those similarly situated are "consumers" within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15.

112. Defendant is a seller within the meaning of TCCWNA, as set forth at N.J.S.A. 56:12-15 and -17.

113. TCCWNA, at N.J.S.A. 56:12-15, provides in relevant part that "no seller, creditor, lender or bailee may offer or enter into any written consumer contract or give or display any notice which includes any provision that violates a clearly established right of the consumer or responsibility of the seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."

114. By violating the CFA, and a clearly established legal right of a consumer and/or responsibility of the seller to not engage in any misrepresentations, deception, or unconscionable commercial conduct in connection with consumer sales as detailed in this Complaint, Defendant thereby violated the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 et seq.

115. Additionally, the EULA includes provisions that violate clearly established right of the consumer or responsibility of the seller, … as established by State or Federal law at the time the

31

offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. More specifically SONY's agreement contains a Limitation of Liability Provision which provides:

> In no event will SONY, (including but not limited to any negligence issues related to Third Party Licensors) its affiliates or third party licensors be liable to you for any special, indirect, incidental, punitive, exemplary or consequential damages of any kind, including but not limited to compensation, reimbursement or damages in connection with, arising out of or relating to this EULA on account of the use or loss of use of the device, software or accompanying documentation, downtime or your time, loss of present or prospective profits, loss of data information of any kind, business profits, or other commercial loss, or for any other reason whatsoever, whether based on theories of contract or tort (including but not limited to negligence or strict liability),even if Sony ,its affiliates or third party licensors have been advised of the possibility of such damages the device, software and accompanying documentation are furnished to you for use at your own risk. SONY, its affiliates and third party licensors will not be liable for damages for breach of any express (except to the extent expressly provided otherwise by this EULA or accompanying documentation) or implied warranty, duty or condition, under breach of contract, negligence, strict liability or any other legal theory related to the device, software, accompany documentation, or this EULA. SONY, its affiliates, and third party licensors cannot ensure that the device, the software or other data you access or download from or through the device will be free of viruses or contamination or destructive features, and Sony, its affiliates, and third party licensors disclaim any liability related thereto. SONY, its affiliates and third party licensors further disclaim any and all liability for the acts, omissions and conduct of any third parties in connection with or related to your use of the device

> or software. If notwithstanding the terms of this
> EULA, SONY, its affiliates and third party
> licensors are found to be labile to you for any
> damage or loss which arises under or in connection
> with this EULA, including but not limited to your
> use of the device, the software, or accompanying
> documentation, their collective total aggregate
> liability to you shall in no event exceed the
> manufacturer's suggested retail price of your
> device.

Then in much smaller print:

> "Some jurisdictions may not allow exclusions or
> limitation of incidental or consequential damages,
> exclusions or limitation of implied warranties,
> duties or conditions, or allow limitations on how
> long an implied warranty, duty or condition lasts,
> so that the above limitations or exclusions may not
> apply to you."

116. These provisions in the EULA result in consumers being automatically deemed to agree to limitations on SONY's liability for damages, and thus violates clearly established legal rights of consumers under New Jersey common law and statutory law, including the right to recover under the NJCFA. Well established New Jersey decisional law holds that exculpatory provisions which purport to release businesses from liability for their own negligent, willful or intentional conduct are unenforceable. See e.g. Martinez-Santiago v. Public Storage, 38 F. Supp.3d 500 (D.N.J. 2014).

117. As the result of Defendant's violations of TCCWNA, Plaintiff and the Class Members are entitled to statutory damages of not less than $100 each as provided by N.J.S.A. 56:12-17.

## SEVENTH COUNT

### (Trespass to Chattels)

118. Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

119. On July 1, 2017 and at all relevant times prior thereto Plaintiff and those similarly situated were the owners of and in possession of working SONY Dash units. These SONY Dash units each cost between $100 to $200 at retail.

120. On July 12, 2017 defendant unlawfully took from plaintiff's possession and the possession of all class members an operational SONY Dash unit through its forced firmware update, leaving plaintiff and the class with a worthless brick.

121. By reason of the unlawful taking of the property, plaintiff and the class has each sustained damages consisting of the fair market value of the property in the amount of $100.

## EIGHTH COUNT

### (Unjust Enrichment)

122. Plaintiff, on behalf of himself and all others similarly situated, incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

123. SONY has been unjustly enriched and received an economic benefit by the sale of the SONY dashes herein to Plaintiff and the Class and Subclass Members.

124. Plaintiff and the Class and Subclass seek to recover for SONY's unjust enrichment.

125. Plaintiff and the Class and Subclass Members conferred a benefit on SONY, but SONY failed to disclose its knowledge that Plaintiff did not receive what they paid for and misled Plaintiff and the Class and Subclass Members regarding the misstatements about the SONY dashes while profiting from this deception.

126. The circumstances are such that it would be inequitable, unconscionable, and unjust to permit SONY to retain the benefit of these profits that it has unfairly obtained from Plaintiff and the Class and Subclass Members.

127. Plaintiff and the Class and Subclass Members, having been injured by SONY's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Defendant SONY to their detriment.

## X. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff on behalf of himself and on behalf of the Nationwide Class and New Jersey Subclass, prays for judgment against SONY granting the following relief:

1. Certification of the proposed Nationwide Class, and New Jersey Subclass, and appointing Plaintiff to represent the Classes and Plaintiff's counsel as class counsel;

2.    All recoverable compensatory, statutory and other damages sustained by Plaintiff and the other members of the Nationwide Class and New Jersey Subclass;

3.    Restitution and disgorgement of all amounts obtained by SONY as a result of its misconduct, together with interest thereon, from the date of payment, to the victims of such violations;

4.    Actual, treble, and/or statutory damages for injuries suffered by Plaintiff and the other members of the Classes in the maximum amount permitted by applicable law;

5. A refund in the amount of the MSRP to each SONY Dash purchaser.

6.    Statutory pre-judgment and post-judgment interest on the Class damages;

7.    Injunctive and declaratory relief;

8.    Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

9.    Such other relief as the Court may deem just and proper.

## XI. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all causes of action so triable.

DATED: April 27, 2018                    NAGEL RICE, LLP

*Attorneys for Plaintiff and the Putative Class*

By:   s/ Bruce H. Nagel
Bruce H. Nagel
Randee M. Matloff
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
bnagel@nagelrice.com
rmatloff@nagelrice.com

**EXHIBIT A**



**SONY.**

4-294-192-**11**(2)

3A2236600-G21-GP

## END USER LICENSE AGREEMENT
## FOR CERTAIN SOFTWARE FOR
## YOUR dash™ DEVICE

**IMPORTANT – READ THIS AGREEMENT BEFORE USING YOUR DEVICE. USING YOUR DEVICE INDICATES YOUR ACCEPTANCE OF THIS AGREEMENT.**

This End User License Agreement ("EULA") is a legal agreement between you and Sony Electronics Inc. ("Sony"), as the licensor of the software (except for Excluded Software as defined below) included in this Device and related materials which shall be collectively referred to as the "Software." This EULA covers the Software, including but not limited to the software of Sony's affiliates and third party licensors ("Third Party Licensors"), and accompanying printed or online documentation. Notwithstanding the 1st sentence, certain Third Party Licensors may license to you certain Software pursuant to this EULA and in such event, the name of such Third Party Licensors will be posted at http://www.sony.com/mydash/, sent by e-mail notification to the e-mail address provided by you or by any other legally recognizable form of notice, and then "Sony" as defined herein shall mean such Third Party Licensors only in connection with such Software. The Software includes all of the software in your Device, including updates or modified software provided to you by Sony, whether stored on media or downloaded to the Device via any method, but not Excluded Software as defined below.

Sony may add to, change, or remove any part, term, or condition of this EULA, including but not limited to as it applies to the Device or Software at any time. Any such additions, changes, or removals posted at http://www.sony.com/mydash/, sent by e-mail notification to the e-mail address provided by you, presented to you as part of a software update process, or by any other legally recognizable form of notice, and shall apply as soon as they are posted. By continuing to use the Device or Software after so posted, you are indicating your acceptance thereto.

If you do not agree to the terms of this EULA or Sony's privacy policy available at www.sony.com/selprivacy, Sony is unwilling to license the Software to you and you must contact Sony immediately for information on returning your Device and Software.

### SOFTWARE LICENSE

The Software is owned by Sony and the Third Party Licensors, and its structure, organization and code are valuable trade secrets of Sony and the Third Party Licensors. Except as expressly set forth in this EULA, this EULA does not grant you any intellectual property rights in your Device (including but not limited to the Software), and you cannot use the Software except as specified herein. The Software is licensed, not sold. Sony grants you a limited license to use the Software only on one (1) Sony-branded Device. The Software may create data files automatically for use with the Software, and you agree that any such data files are deemed to be a part of the Software. The Software is licensed as a single product, and you may not separate its component parts for use on more than one (1) Device unless expressly authorized by Sony. You agree not to copy, modify, publish, adapt, redistribute, reverse engineer, decompile, disassemble, attempt to derive or discover source code, or otherwise reduce to a human-perceivable form, or create derivative works of, the Software in whole or in part or to use the Software in whole or in part for any purpose other than as expressly permitted under this EULA. In addition, you may not share, distribute, loan, rent, lease, sublicense, assign, transfer, or sell the Software, but you may transfer all of your rights under this EULA only as part of a sale or transfer of the Device provided: (i) you retain no copies of, and transfer all of the Software (including but not limited to all copies, component parts, any media, printed materials, all versions and any upgrades of the Software, and this EULA) as part of such sale or transfer; (ii) comply with the requirements of the section below entitled "De-registering Your Device"; and (iii) the recipient agrees to the terms of this EULA and Sony's privacy policy. Sony and its Third Party Licensors retain all rights, title and interest (including but not limited to intellectual property rights) that this EULA does not expressly grant to you. You shall not: (a) violate, tamper with, bypass, modify, defeat, or circumvent any of the functions or protections of the Software, or any mechanisms operatively linked to the Software; or (b) remove, alter, cover, or deface any trademarks or proprietary legends, notices or language in or on the Software.

### EXCLUDED SOFTWARE

Notwithstanding the foregoing limited license grant, you acknowledge that the Device includes third party software subject to other terms and conditions governing the use of such software other than this EULA ("Excluded Software"). Certain Excluded Software may be covered by open source software licenses ("Open Source Components"), which means any software licenses approved as open source licenses by the Open Source Initiative or any substantially similar licenses, including but not limited to any license that, as a condition of distribution of the software licensed under such license, requires that the distributor make the software available in source code format. Terms and conditions applicable to Open Source Components are provided to you together with this EULA and/or stored in your Device under one or more applicable menu tabs. Please visit http://www.sony.net/Products/Linux for a list of applicable Excluded Software included in this Device from time to time, and

the applicable terms and conditions governing its use. Such terms and conditions may be changed by the applicable third party at any time without liability to you. To the extent required by the licenses covering Open Source Components, the terms of such licenses will apply in lieu of the terms of this EULA. To the extent the terms of the licenses applicable to Open Source Components prohibit any of the restrictions in this EULA with respect to such Open Source Component, such restrictions will not apply to such Open Source Component. To the extent the terms of the licenses applicable to Open Source Components require Sony to make an offer to provide source code in connection with the Software, such offer is hereby made.

### CONSENT TO USE OF NON-PERSONAL INFORMATION, LOCATION DATA, DATA SECURITY

You agree that Sony and its affiliates, partners and agents may read, collect, transfer, process and store certain information from the Device and the Software, including but not limited to information about the Device, the Software and the software applications and peripheral devices that interact with the Device and the Software ("Information"). Information includes, but is not limited to: (1) unique identifiers relating to your Device and its components; (2) performance of the Device, the Software and their components; (3) configurations of your Device, the Software and the software applications and peripheral devices that interact with the Device and the Software; (4) use and frequency of use of the functions of the Device, the Software, and the software applications and peripheral devices that interact with the Device and the Software; and (5) location data, as indicated below. Sony and its affiliates, partners and agents may use and disclose Information subject to applicable laws in order to improve its products and services or to provide products or services to you. Such uses include, but are not limited to: (1) administering the functionalities of the Device and the Software to improve, service, update or upgrade the Device or the Software; (2) improving, developing and enhancing the current and future products and services of Sony and other parties; (3) with your consent, to provide you with information about the products and services offered by Sony and other parties; (4) complying with applicable laws or regulations; and (5) providing you with location-based services of Sony and other parties, as indicated below. In addition, Sony retains the right to use Information to protect itself and third parties from illegal, criminal or harmful conduct.

Certain services available through the Device, including but not limited to Internet connectivity, may rely upon location information, including the real-time geographic location of the Device. You acknowledge that for the purpose of providing such services, Sony, Third Party Licensors or their partners may collect, archive, process and use such location data, and that such services are governed by the privacy policies of Sony or such third party.

Sony, its affiliates, partners and agents will not intentionally use Information to personally identify the owner or the user of the Device without your further consent. Sony's current privacy policy is located at www.sony.com/selprivacy. Please contact applicable third parties for privacy policies relating to personally identifiable and other information you provide when you use or access third party software or services.

Information may be processed, stored or transferred to Sony, its affiliates or agents which are located in countries outside of your country of residence. Data protection and information privacy laws in certain countries may not offer the same level of protection as your country of residence and you may have fewer legal rights in relation to Information processed and stored in, or transferred to, such countries. Sony will use reasonable endeavors to take appropriate technical and organizational steps to prevent unauthorized access to or disclosure of Information, but does not warranty it will eliminate all risk of misuse of such Information.

### INTERNET CONNECTIVITY AND THIRD PARTY SERVICES

You understand, acknowledge and agree that access to certain Device features, including but not limited to downloading applications or browsing or searching the Internet, requires an Internet connection for which you are solely responsible. You are solely responsible for payment of any third party fees associated with your Internet connection, including but not limited to Internet service provider or airtime charges. Operation of the Device and Software may be limited or restricted depending on the capabilities, bandwidth or technical limitations of your Internet connection and service. You understand, acknowledge and agree that Internet connectivity and certain content and services available through the Device are provided by third parties over which Sony has no control, and are governed by the respective terms and conditions, and privacy policies of such third parties which may be amended from time to time. The provision, quality, availability and security of such Internet connectivity, software and services are the sole responsibility of such third party.

### EXCLUSION OF WARRANTY

THE SOFTWARE AND ACCOMPANYING DOCUMENTATION ARE FURNISHED TO YOU "AS IS" AND "AS AVAILABLE" AND WITHOUT WARRANTIES, DUTIES OR CONDITIONS, STATUTORY OR OTHERWISE, OF ANY KIND. SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS EXPRESSLY DISCLAIM ALL WARRANTIES, DUTIES AND CONDITIONS, EXPRESS (EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE BY THIS EULA) OR IMPLIED, STATUTORY OR OTHERWISE, OF ANY KIND, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF NON-INFRINGEMENT, TITLE, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE. SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS DO NOT WARRANT THAT THE SOFTWARE OR ACCOMPANYING DOCUMENTATION, WILL MEET YOUR REQUIREMENTS OR PROVIDE SPECIFIC RESULTS, OR THAT THEY WILL BE UPDATED, OR THAT THE OPERATION OF ALL OR ANY OF THEM WILL BE UNINTERRUPTED OR ERROR FREE, OR THAT ANY DEFECTS WILL BE CORRECTED. FURTHERMORE, SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS DO NOT WARRANT OR MAKE ANY REPRESENTATIONS OR CONDITIONS REGARDING THE USE OR THE RESULTS OF THE USE OF THE SOFTWARE OR ACCOMPANYING DOCUMENTATION IN TERMS OF THEIR ACCURACY, RELIABILITY, COMPLETENESS OR OTHERWISE. SONY AND ITS AFFILIATES AND THIRD PARTY LICENSORS SHALL HAVE NO RESPONSIBILITY FOR THE SECURITY OF, TIMELINESS, DELETION, MIS-DELIVERY, OR

THERE IS NONE. ANY ORAL OR WRITTEN COMMUNICATION OR DISPERSON RELATED SETTINGS NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY SONY, ITS AFFILIATES, A SONY AUTHORIZED REPRESENTATIVE OR ANY THIRD PARTY SHALL CREATE A WARRANTY, DUTY OR CONDITION, OR IN ANY WAY CHANGE THIS EXCLUSION OF WARRANTY. DUTY AND CONDITION. SHOULD THE SOFTWARE OR THE MEDIA ON WHICH IT IS FURNISHED OR THE ACCOMPANYING DOCUMENTATION PROVE DEFECTIVE, YOU (AND NOT SONY, ITS AFFILIATES, A SONY AUTHORIZED REPRESENTATIVE OR ANY THIRD PARTY) ASSUME THE ENTIRE COST OF ALL NECESSARY SERVICING, REPAIR, OR CORRECTION.

Without limiting the generality of the foregoing, you further understand, acknowledge and agree that the Software is not designed or intended for use on any device other than the Device. You expressly acknowledge and agree that any other hardware, software, content or data could be damaged by installing or using the Software on any other device other than the Device, and Sony, its affiliates and Third Party Licensors are not responsible for any such damage.

## LIMITATION OF LIABILITY

IN NO EVENT SHALL SONY (INCLUDING BUT NOT LIMITED TO ANY NEGLIGENCE ISSUES RELATED TO THIRD PARTY LICENSORS), ITS AFFILIATES OR THIRD PARTY LICENSORS BE LIABLE TO YOU FOR ANY SPECIAL, INDIRECT, INCIDENTAL, PUNITIVE, EXEMPLARY, OR CONSEQUENTIAL DAMAGES OF ANY KIND, INCLUDING BUT NOT LIMITED TO COMPENSATION, REIMBURSEMENT OR DAMAGES IN CONNECTION WITH, ARISING OUT OF OR RELATING TO THIS EULA ON ACCOUNT OF THE USE OR LOSS OF USE OF THE DEVICE, SOFTWARE OR ACCOMPANYING DOCUMENTATION. DOWNTIME OR YOUR TIME, LOSS OF PRESENT OR PROSPECTIVE PROFITS, LOSS OF DATA, INFORMATION OF ANY KIND, BUSINESS PROFITS, OR OTHER COMMERCIAL LOSS, OR FOR ANY OTHER REASON WHATSOEVER. WHETHER BASED ON THEORIES OF CONTRACT OR TORT (INCLUDING BUT NOT LIMITED TO NEGLIGENCE OR STRICT LIABILITY), EVEN IF SONY, ITS AFFILIATES OR THIRD PARTY LICENSORS HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE DEVICE, SOFTWARE AND ACCOMPANYING DOCUMENTATION ARE FURNISHED TO YOU FOR USE AT YOUR OWN RISK. SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS WILL NOT BE LIABLE FOR DAMAGES FOR BREACH OF ANY EXPRESS (EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE BY THIS EULA OR ACCOMPANYING DOCUMENTATION) OR IMPLIED WARRANTY, DUTY OR CONDITION, UNDER BREACH OF CONTRACT, NEGLIGENCE, STRICT LIABILITY OR ANY OTHER LEGAL THEORY RELATED TO THE DEVICE, SOFTWARE, ACCOMPANYING DOCUMENTATION OR THIS EULA. SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS CANNOT ENSURE THAT THE DEVICE, THE SOFTWARE OR OTHER DATA YOU ACCESS OR DOWNLOAD FROM OR THROUGH THE DEVICE WILL BE FREE OF VIRUSES OR CONTAMINATION OR DESTRUCTIVE FEATURES, AND SONY, ITS AFFILIATES, AND THIRD PARTY LICENSORS DISCLAIM ANY LIABILITY RELATED THERETO. SONY, ITS AFFILIATES AND THIRD PARTY LICENSORS FURTHER DISCLAIM ANY AND ALL LIABILITY FOR THE ACTS, OMISSIONS AND CONDUCT OF ANY THIRD PARTIES IN CONNECTION WITH OR RELATED TO YOUR USE OF THE DEVICE OR SOFTWARE. IF, NOTWITHSTANDING THE TERMS OF THIS EULA, SONY, ITS AFFILIATES AND THIRD PARTY LICENSORS ARE FOUND TO BE LIABLE TO YOU FOR ANY DAMAGE OR LOSS WHICH ARISES UNDER OR IN CONNECTION WITH THIS EULA, INCLUDING BUT NOT LIMITED TO YOUR USE OF THE DEVICE, THE SOFTWARE, OR ACCOMPANYING DOCUMENTATION, THEIR COLLECTIVE TOTAL AGGREGATE LIABILITY TO YOU SHALL IN NO EVENT EXCEED THE MANUFACTURER'S SUGGESTED RETAIL PRICE OF YOUR DEVICE.

Some jurisdictions may not allow exclusions or limitations of incidental or consequential damages, exclusions or limitations of implied warranties, duties or conditions, or allow limitations on how long an implied warranty, duty or condition lasts, so the above limitations or exclusions may not apply to you.

## AUTOMATIC UPDATE FEATURE

From time to time, Sony, its affiliates, Third Party Licensors or other third parties may automatically update or otherwise modify the Software, for example, but not limited to, for purposes of error correction, improvement of features, and enhancement of security features. Such updates or modifications may change or delete the nature of features or other aspects of the Software, including but not limited to features you may rely upon. You hereby agree that such updates and modifications may occur at Sony's sole discretion, and that Sony may condition continued use of the Software upon your complete installation or acceptance of such updates or modifications.

## HIGH RISK ACTIVITIES

The Software and any other software provided on or through the Device is not fault-tolerant and is not designed, manufactured or intended for use or resale as on-line control equipment in hazardous environments requiring fail-safe performance, such as in the operation of nuclear facilities, aircraft navigation or communication systems, air traffic control, direct life support machines, or weapons systems, in which the failure of the Software or such other software could lead to death, personal injury, or severe physical or environmental damage ("High Risk Activities"). SONY, THIRD PARTY LICENSORS, AND EACH OF THEIR RESPECTIVE AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, INFORMATION PROVIDERS, LICENSORS AND LICENSEES. AND SUCCESSORS AND ASSIGNS, SPECIFICALLY DISCLAIM ANY EXPRESS OR IMPLIED WARRANTY, DUTY OR CONDITION OF FITNESS FOR HIGH RISK ACTIVITIES. YOU ARE SOLELY RESPONSIBLE FOR ANY AND ALL ACTION, OR LACK OF ACTION, TAKEN TO PRESERVE LIFE OR PROPERTY.

## USE OF SOFTWARE WITH COPYRIGHTED MATERIALS

The Software may be capable of being used by you to store, process and use content created by you and third parties. Such content may be protected by copyright, other intellectual property laws, and/or agreements. You agree to use the Software only in compliance with all such laws and agreements that apply to such content. You agree that Sony may take appropriate measures to protect copyright of content stored, processed or used by the Software. Such measures include, but are not limited to, counting the frequency of your backup and restoration through certain Software features, refusal to accept your request to enable restoration of data through certain

software features and termination of this EULA in the event of your use of the Software in violation of this EULA or applicable laws. rules or regulations.

## EXPORT RESTRICTIONS

The Software may contain encryption technology. You acknowledge that any export of Software containing encryption technology from the United States or subsequent re-export of such software or content by a person located outside of the United States requires a license or other authorization from the U.S. Department of Commerce's Bureau of Industry and Security. You further acknowledge that the Software containing encryption technology and acquired from Sony or its Third Party Licensors is not intended for use by a foreign government end user. By accepting this EULA, you agree to abide by all relevant U.S. export laws and regulations in the purchase and use of the Device being acquired, including but not limited to those regulations relating to the export control of cryptographic items and not to transfer, or authorize the transfer, of the Device or Software to a prohibited country or otherwise in violation of any such restrictions or regulations.

## U.S. GOVERNMENT RESTRICTED RIGHTS

The Software and any other software provided on or through the Device is provided with RESTRICTED RIGHTS. Use, duplication or disclosure by the United States Government is subject to restrictions as set forth in subparagraphs (c)(1) and (c)(2) of the Commercial Computer Software clause at FAR 52.227-19, and subparagraph (c)(1)(ii) of the Rights in Technical Data and Computer Software clause at DOD FAR 252.227-7013 and any comparable federal, state or local law or regulation. Manufacturer is Sony Electronics Inc., 16530 Via Esprillo, San Diego, CA 92127.

## JURY TRIAL WAIVER

TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW, THE PARTIES HERETO WAIVE TRIAL BY JURY WITH RESPECT TO ANY MATTERS OR DISPUTES ARISING UNDER OR RELATING TO THIS EULA. Any claim or cause of action arising under this EULA, or you may have with respect to the Device, Software, or accompanying documentation must be commenced within one (1) year after the claim or cause of action arises.

## EQUITABLE REMEDIES

You agree that any violation of or non-compliance with any term or condition this EULA by you will constitute an unlawful and unfair business practice, and will cause irreparable harm to Sony, its affiliates or Third Party Licensors for which monetary damages would be inadequate, and you consent to Sony obtaining any injunctive or equitable relief that Sony deems necessary or appropriate in such circumstances. These remedies are in addition to any other remedies that may be available to Sony under contract, at law or in equity.

## ENTIRE AGREEMENT, NOTICE, WAIVER, SEVERABILITY

This EULA, the limited warranty accompanying the Device, and Sony's privacy policy, each as amended and modified from to time, together constitute the entire agreement between you and Sony with respect to the subject matter hereof. The United Nations Convention on Contracts for the International Sale of Goods shall not apply to this EULA, including but not limited to the Device or the Software. Furthermore, this EULA (including but limited to the Device or the Software) will not be governed or interpreted in any way by referring to any law based on the Uniform Computer Information Transactions Act (UCITA) or any other act derived from or related to UCITA. Any notice by Sony hereunder may be made by letter, e-mail, or posting on or through the Device or at http://www.sony.com/mydash/ , or as otherwise specified herein. The failure of Sony to exercise or enforce any right or provision of this EULA shall not constitute a waiver of such right or provision. If any part of this EULA is held invalid, illegal, or unenforceable, that provision shall be enforced to the maximum extent permissible so as to maintain the intent of this EULA, and the other parts will remain in full force and effect.

## THIRD PARTY BENEFICIARIES

This EULA shall not be interpreted or construed to confer any rights or remedies on any third parties, except that each Indemnified Party, and Third Party Licensor shall and is an express intended third party beneficiary of, and shall be entitled to directly enforce and rely upon, each provision of this EULA that confers a right or remedy in favor of such party.

## TERM AND SURVIVAL

This EULA is effective until terminated. Sony may terminate this EULA immediately if you fail to comply with its terms by giving you notice. In addition, upon termination you will have no recourse against Sony, its affiliates or Third Party Licensors for your inability to use the Software or the accompanying documentation. Any of your obligations under this EULA which by their nature are intended to survive the termination of this EULA or your use of the Device or Software shall continue to apply to you after the termination of this EULA or you cease to use the Device or Software.

## DE-REGISTRATION OF YOUR DEVICE

Should you return your Device to its place of purchase, transfer your Device in accordance with this EULA, or if this EULA is terminated, you agree to: (i) de-register the Device by deleting any and all accounts you may have established on or have accessed through the Device and (ii) reset the Device to its original factory settings. YOU ARE SOLELY RESPONSIBLE FOR MAINTAINING THE CONFIDENTIALITY OF ANY ACCOUNTS YOU HAVE WITH THIRD PARTIES AND ANY USERNAMES AND PASSWORDS ASSOCIATED WITH YOUR USE OF THE DEVICE.

## FEEDBACK

Should you have any questions concerning this EULA, you may contact Sony by writing to Sony Technical Response Center, 12451 Gateway Boulevard, Fort Myers, Florida 33913 U.S.A.

© 2011 Sony Corporation      Printed in China