**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RICHARD GRISAFI, *on behalf of himself and the Putative Class*,

        *Plaintiffs*,

v.

SONY ELECTRONICS INC.,

        *Defendant*.

Civil Action No. 18-8494

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This putative class action concerns a software update that intentionally rendered a personal internet viewing device, the Sony Dash, nonfunctional. D.E. 27. Plaintiff Richard Grisafi originally brought eight claims against Defendant Sony Electronics, Inc., two of which survived Defendant's initial motion to dismiss. Plaintiff thereafter filed an Amended Complaint ("FAC"), repleading one of the six dismissed claims – Count Two, which asserts a claim for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq*. D.E. 27. Currently pending before the Court is Defendant's motion to dismiss Count Two of Plaintiff's Amended Complaint. D.E. 32. The Court reviewed the parties' submissions[1] and considered this motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons, Defendant's motion to dismiss is **GRANTED**.

---

[1] Defendant's brief in support of its motion will be referred to as "Def.'s Br." (D.E. 32); Plaintiff's opposition will be referred to as "Pl.'s Opp." (D.E. 33); Defendant's reply will be referred to as "Def.'s Reply" (D.E. 38).

## I. BACKGROUND[2]

The Court included a comprehensive factual background in its April 30, 2019 Opinion, D.E. 23, which the Court incorporates by reference here. By way of background, in 2010, Sony released the Dash, which was described as a "personal application viewer featuring built-in Wi-Fi, stereo speakers, a USB port, and a 7-inch touch screen." FAC. ¶ 17. The Dash supported over 1,000 free applications, including those that allow access to, *inter alia*, Facebook, YouTube, Pandora, Flickr, and Netflix. *Id.* ¶¶ 18, 21-22, 25. Plaintiff purchased five Dashes in total. *Id.* ¶¶ 30-34. On July 20, 2011 he purchased two HID-C10 Dashes (the original model) from Amazon.com for $104.96 each and then bought another one later. *Id.* ¶¶ 30-33. Less than a year later, he purchased an HID-B70 Dash (an updated model that featured a backup battery) from Woot.com for $79.99, and subsequently purchased a final HID-B70 Dash from eBay.[3] *Id.* ¶ 34.

In April 2017, Sony announced that it would no longer be supporting the Dash and would terminate its server support in July 2017. *Id.* ¶ 25. Thereafter, in July 2017, Sony released a software update for the Dash (the "Update"), which apparently shut down the dedicated servers upon which the Dash relied. *Id.* ¶ 28. Plaintiff was unable to opt out of the Update. *Id.* ¶ 37. Plaintiff alleges, and Defendants do not deny, that this was the intended and sole effect of the

---

[2] The facts are derived from Plaintiff's FAC, D.E. 27, and documents relied upon therein. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A court may also consider any document integral to or relied upon in the complaint, and matters of public record. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

[3] Like his original Complaint, Plaintiff's FAC does not include dates or prices for the purchases other than those stated.

Update. *Id.* Given that the Update rendered the device nonfunctional, Plaintiff alleges that Sony "bricked" the Dash. *Id.* Plaintiff explains that "bricking" refers to a software update that renders the hardware "useless." *Id.* ¶ 3 n.1 (citation omitted).

Plaintiff filed his original Complaint on April 27, 2018, alleging eight causes of action: (1) violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*; (2) violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.*; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 230 *et seq.*; (6) violation of the New Jersey Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-15 *et seq.*; (7) trespass to chattel; and (8) unjust enrichment. D.E. 1. Defendant filed a motion to dismiss, D.E. 15, which the Court granted as to six of the eight claims – the CFAA and trespass to chattel counts remained, D.E. 23. The Court also provided Plaintiff an opportunity to file an amended complaint, which Plaintiff did on May 29, 2019, repleading only one of the six dismissed counts: Count Two, which asserts a claim for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 *et seq.* D.E. 27. Defendant again moved to dismiss Count Two. D.E. 32. Plaintiff filed opposition, D.E. 33, to which Defendant replied. D.E. 38.

## II.     STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead

4

or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotations omitted).

### III.  LAW AND ANALYSIS

Plaintiff repleads Count Two for violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 *et seq*. FAC ¶¶ 61-72. The CFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. "To state a claim under the CFA, a plaintiff needs to allege: '(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss.'" *DeGennaro v. Am. Bankers Ins. Co. of Fla.*, 737 F. App'x 631, 635 (3d Cir. 2018) (unpublished) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009)). In reference to the element of unlawful conduct, "courts have derived three broad categories of unlawful conduct: affirmative acts, knowing omissions, and regulatory violations." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 436 (D.N.J. 2012).

In his original complaint, Plaintiff alleged affirmative misrepresentations and knowing omissions. D.E. 1. However, in his Amended Complaint, Plaintiff appears to have added an additional theory of liability. Specifically, Plaintiff now contends that the intentional bricking of

5

the Dash constituted an "unconscionable commercial practice" under the CFA.[4] Accordingly, the Court addresses the following theories of liability under the CFA: (1) affirmative misrepresentation; (2) knowing omission; and (3) unconscionable commercial practice.

### A. Affirmative Misrepresentation[5]

Plaintiff first alleges that Defendant made certain affirmative misrepresentations. FAC ¶¶ 40(b), 65. Plaintiff alleges that Sony misrepresented that the Dash was a "personal application and/or internet viewer which would utilize SONY's dedicated servers to operate and that SONY would stand behind its product." *Id.* ¶ 65. Defendant again argues that the first clause of the sentence is neither false nor misleading; in other words, the Dash *was* a personal application and/or internet viewer, which *did* use Sony's dedicated servers. Def.'s Br. at 8. The Court agrees. As for the second clause of the sentence – that Sony "would stand behind its product" – Defendant argues that Plaintiff has not identified any statement by Sony where it represented that it would "stand behind" the Dash. *Id.* Again, the Court agrees.

---

[4] In his opposition, Plaintiff makes clear that:

> [T]he crux of the revisions [in the Amended Complaint] were to shift the focus of the type of unlawful commercial practice to primarily rely upon the unconscionable commercial practice prong of the [CFA] to describe the conduct engaged in by Sony. While [Plaintiff] believe[s] that the fraud by omission claims are viable as well, the strongest basis for finding that Sony has committed a CFA violation is Sony's unconscionable commercial practice.

Pl.'s Opp. at 10-11.

[5] Defendant notes that Plaintiff does not appear to argue his affirmative misrepresentation theory in his opposition. Def.'s Reply at 2; *see also* Pl.'s Opp. at 11-28 (appearing to argue only those theories related to Defendant's unconscionable commercial practice and knowing omission). Nonetheless, the allegations in Plaintiff's Amended Complaint provide a basis for an affirmative misrepresentation theory, so the Court will consider them.

6

Plaintiff's new allegations fail for similar reasons. Plaintiff now asserts that he read "articles [] on the internet which touted that the Dash could be used as a photo frame, internet radio, Facebook feed, watch Netflix, Hulu, YouTube, and check the weather among many other features." FAC ¶ 65. Plaintiff, however, does not identify which articles to which he is referring, much less allege that Sony was responsible for them. Plaintiff also fails to explain how those representations were false. Indeed, the Dash *could be* used for those purposes. Furthermore, Plaintiff alleges that "[a]rticles quoting Sony's senior vice president, Brennan Mullin, reinforced the impression that Sony's servers would remain operational so that the functionality of the Dash could be utilized without an arbitrary shut-down[.]" *Id.* Again, however, Plaintiff does not identify the articles to which he is referring, nor any statement by Defendant where it represented that its servers "would remain operational" for any particular length of time, let alone any representation that "reinforced" Plaintiff's impression to that effect.

In sum, Plaintiff's new allegations have not cured the pleading deficiencies identified in his original Complaint. Plaintiff still has not pled with particularity facts that demonstrate Defendant made affirmative misrepresentations concerning the Dash. Plaintiff does not identify any promotional language by Defendant indicating that the Dash "would remain operational" for any particular length of time, or that Defendant would indefinitely "stand behind its product." *Id.* Accordingly, Plaintiff fails to plead an affirmative misrepresentation.

### B. Knowing Omission

Plaintiff next alleges that Defendant knowingly concealed a material fact with the intent that Plaintiff rely upon the omission. FAC ¶¶ 40(b), 66. Under the knowing omission theory, a defendant is liable for failing to inform consumers of a known defect in a product. *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *8 (D.N.J. Dec. 29, 2011) (plaintiff brought

7

CFA claim against car manufacturer for allegedly knowing about defective steering system yet failed to inform consumers). "An actionable omission [] occurs where the defendant (1) knowingly concealed (2) a material fact (3) with the intention that the consumer rely upon the concealment." *Coba v. Ford Motor Co.*, 2017 WL 3332264, at *2 (D.N.J. Aug. 4, 2017), *aff'd*, 932 F.3d 114 (3d Cir. 2019) (internal quotation omitted). Moreover, "a plaintiff seeking to recover based on a defendant's omission, 'must show that the defendant acted with knowledge, and intent is an essential element of the fraud.'" *Bosland*, 197 N.J. at 556 (quoting *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994)).

Here, Plaintiff has not sufficiently plead that Defendant knowingly concealed a material fact with the intention that consumers rely on that omission. As an initial matter, Plaintiff's FAC does not clearly delineate his "omissions" theory under the CFA. From what the Court can gather, Plaintiff appears to put forth two separate theories concerning Defendant's alleged omissions: (1) Defendant concealed that it *would* remotely brick the Dash if it became unprofitable[6]; and (2) Defendant concealed that the Dash had the *ability* to be remotely bricked.[7] *See* FAC ¶ 40(a),(b).

As to Plaintiff's first theory, to the extent Plaintiff is rearguing, as he did in his original Complaint, that the concealed "defect" in the Dash was that Defendant *would* brick the Dash if it

---

[6] *See* FAC ¶ 40(a)("SONY concealed when it started selling the Dash in 2010 that if SONY decided that maintaining the server paired with the Dash was costing SONY more than the company wanted to spend[,] it *would* deliberately take an affirmative action over the internet which would render the Dash useless and essentially a piece of trash[.]") (emphasis added); *see also id.* ("SONY failed to disclose that [it] *would* [] shut down the servers and brick the Dash in the event expected profits were not realized.") (emphasis added).

[7] *See id.* ¶ 40(b)("SONY . . . did not advise users that SONY designed the Dash with the *ability* to force a software update that would brick the Dash and enable SONY to shut down the servers simply because SONY was not realizing its expected profits.") (emphasis added); *see also id.* ("SONY knew and failed to disclose that it had the *ability* to remove all the operational features of the Dash through [] remote access.") (emphasis added).

8

became unprofitable, the Court again finds this argument unpersuasive. As noted in the Court's previous Opinion, Plaintiff implicitly admits that Defendant *did not know* whether the Dash would be profitable, meaning that Defendant could not have known that it *would* brick the Dash – *i.e.* that the Dash was "defective" – at the time Plaintiff made his purchases. Therefore, Defendant could not have *knowingly* concealed this "defect" from Plaintiff. In other words, if the Dash continued to be profitable and Sony continued to support the device, then the Dash would not be defective – in fact, it would function exactly as advertised. *See also* FAC ¶ 40(b)("There was nothing functionally wrong with the Dash when SONY forced the software update."). As explained in the Court's previous Opinion, given the uncertainty of the Dash's profitability at the time of Plaintiff's purchases, the Court cannot reasonably infer that Defendant knowingly concealed the "defect." Plaintiff still has not adequately alleged that Defendant *knew* when it sold the Dashes that it *would* disable the devices' functionality.

As to Plaintiff's second theory, Plaintiff likewise has not sufficiently plead that Defendant knowingly concealed that the Dash had the ability to be remotely bricked. Under this theory, it appears that Defendant's "unlawful practice" was its knowing concealment of the Dash's *ability* to be remotely bricked whenever Defendant desired. Plaintiff, however, must still demonstrate that Defendant "knowingly, with the intent of inducing reliance, conceal[ed], suppress[ed], or omitt[ed] a material fact." *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 F. App'x 94, 104 (3d Cir. 2013)(unpublished)(quoting *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576 (2013)).

Here, Plaintiff alleges that "SONY knew and failed to disclose that it had the ability to remove all the operational features of the Dash through [] remote access." FAC ¶ 40(b). Plaintiff, however, has not plead any facts from which the Court can reasonably infer that Defendant, in

9

fact, had knowledge of this alleged "defect" and intentionally concealed it from Plaintiff at the time of his purchases. *See Gotthelf*, 525 F. App'x at 103 ("One crucial deficiency in [plaintiff's] pleadings dooms [] his [CFA] claim[]: [plaintiff] has not alleged any facts that demonstrate that [Defendant] had knowledge of, and intentionally concealed, the alleged defect in the [product].").

In support of his theory, Plaintiff alleges that Defendant knew that the Dash had the ability to be remotely bricked because one of Defendant's affiliates had used a software update to disable some of the functionality of a different Sony product the same year that the Dash went to market. FAC ¶ 66. Plaintiff alleges in conclusory fashion that this demonstrates Defendant's "business model" of "walk[ing] away from its obligations." *Id*. Yet, Plaintiff's theory is entirely premised on a single allegation of a different update, for a different product, which disabled only certain functions, with an unknown purpose,[8] issued by an affiliate of Defendant, seven years before Defendant bricked the Dash. This factual support is insufficient for Court to reasonably infer that Defendant knowingly concealed, at the time of Plaintiff's purchases, the Dash's ability to be remotely bricked. *See Gotthelf*, 525 F. App'x at 103 ("When pleading knowledge, the complaint must still contain more than a 'conclusory allegation,' and the pleading must meet the 'less rigid – though still operative – strictures of Rule 8.'") (quoting *Iqbal*, 556 U.S. at 686-87)).

Moreover, even assuming Plaintiff had sufficiently plead his second "omission" theory, Plaintiff still fails to sufficiently allege causation. In his opposition, Plaintiff points to several cases for the general proposition that, to sufficiently allege causation under the CFA, "it is sufficient if a plaintiff avers that had the alleged defect been disclosed, consumers would not have purchased defendant's product." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 447 (quoting

---

[8] Plaintiff does not provide an explanation regarding the reason for this other product's update. Plaintiff merely indicates that such an update occurred. *See* FAC ¶¶ 40(a), (b), 66.

10

*Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 503 (D.N.J. 2009)); *see also Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442, 2009 WL 44748, at *4 (D.N.J. Jan. 6, 2009) (plaintiff adequately alleged causation where plaintiff claimed that it would not have purchased defendant's software had it known that it contained the defect at issue); *Strzakowlski v. GMC*, No. 04-4740, 2005 WL 2001912, at *7-8 (D.N.J. Aug. 16, 2005) (plaintiff adequately alleged causation where plaintiff claimed she would not have purchased her vehicle if defendant had disclosed the defect at issue).

Plaintiff argues in his opposition that his Amended Complaint "clearly contains this assertion." Pl.'s Opp. at 34 (citing FAC ¶¶ 9, 69, 70). Plaintiff's Amended Complaint makes the following allegations:

> Had Plaintiff and other members of the Class known of SONY's *plan to brick the product* after a few years of its introduction to the marketplace they would not have bought a Dash, or would have paid substantially less for them. FAC ¶ 9 (emphasis added).
>
> Plaintiff and the Class would not have purchased the SONY Dash *if they knew that it would be bricked* after owning it for just a few years. *Id.* ¶ 69 (emphasis added).
>
> Alternatively, Plaintiff and the class would have paid far less for the SONY Dash *if they knew that its useable lifespan would have been deliberately shortened* at the whim of SONY. *Id.* ¶ 70 (emphasis added).

These allegations, however, only relate to Plaintiff's *first* "omission" theory (that Defendant failed to disclose that it *would* remotely brick the Dash).[9] Notably, such allegations do not relate to

---

[9] The allegations also highlight the deficiency with Plaintiff's first theory. Plaintiff has not provided sufficient allegations that this was, in fact, Defendant's plan *when* it sold Dashes to Plaintiff. Plaintiff does not adequately allege that Defendant had already decided to brick the Dashes when Plaintiff bought them. Instead, Plaintiff's allegations indicate that future bricking was a contingent possibility, that is, one based on the profitability of the Dash. Frankly, it runs counter to common sense and good business practice that a company would decide ahead of time to brick a product even if it turned out to be profitable.

11

Plaintiff's *second* "omission theory" (that Defendant failed to disclose the Dash had the *ability* to be remotely bricked). In other words, Plaintiff does not allege that he would not have bought a Dash, or would have paid less for a Dash, had he known that the Dash had the *ability* to be remotely bricked (as opposed to that Defendant *would* remotely brick the Dash). As such, Plaintiff provides no allegations from which the Court could reasonably infer that, had Defendant disclosed that the Dash had the *ability* to be remotely bricked, Plaintiff would not have suffered an ascertainable loss. Accordingly, the Amended Complaint, as pled, also does not sufficiently allege a causal relationship between Defendant's alleged "unlawful conduct" and Plaintiff's alleged "ascertainable loss" insofar as it relates to Plaintiff's second "omission" theory. *See Dugan v. TGI Fridays, Inc.*, 231 N.J. 24, 53 (2017) ("The limiting nature of the [causal relationship] requirement allows a private cause of action only to those who can demonstrate a loss attributable to conduct made unlawful by the CFA."). In sum, Plaintiff fails to sufficiently plead a CFA claim under either of his two "omission" theories.

### C. Unconscionable Commercial Practice

Plaintiff finally alleges that Defendant engaged in an unconscionable commercial practice. FAC ¶ 71. The CFA does not define the term "unconscionable commercial practice," but the "New Jersey Supreme Court has instructed courts to 'pour content' into the term on a case-by-case basis." *Ciser v. Nestle Waters N.A. Inc.*, 596 F. App'x 157, 161 (3d Cir. 2015) (unpublished) (quoting *Kugler v. Romain*, 58 N.J. 522 (1971)). While "an unconscionable commercial practice 'is an amorphous concept obviously designed to establish a broad business ethic,' the term is not without limits." *Id.* (quoting *Cox*, 138 N.J. at 18). The New Jersey Supreme Court has explained that "[t]he standard of conduct that the term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" *Cox*, 138 N.J. at 18 (quoting *Kugler*, 58 N.J. at 544).

"On the other hand, conduct that is merely unfair or that causes consumer dissatisfaction is not necessarily an unconscionable commercial practice." *Slinko-Shevchuk v. Ocwen Fin. Corp.*, No. 13-5633, 2015 WL 1271963, at *6 (D.N.J. Mar. 18, 2015) (dismissing plaintiff's "unconscionable commercial practice" claim where defendant's conduct "lacked any indication of deception or other aggravating circumstances that would place the business practice 'outside the norm of reasonable business practice in that it will victimize the average consumer.'" (internal citation omitted)).

Here, again, the FAC appears to offer differing theories with respect to what specific conduct Defendant engaged in that amounted to an "unconscionable commercial practice." For example, Plaintiff alleges that "SONY's history of repeatedly engaging in this conduct [*i.e.* bricking their products] without disclosing to potential purchasers that SONY could engage in deliberate, arbitrary conduct to destroy all utility of its products, constitutes unconscionable commercial conduct." FAC ¶ 40(b). Plaintiff further alleges that such conduct "is an element of SONY's business model[.]" *Id.* From this, it appears to the Court that Plaintiff's first theory regarding "unconscionable commercial practice" is that Defendant has a "business model" and "history" of "repeatedly" bricking their products but not informing consumers that Defendant could do so.

On the other hand, Plaintiff also alleges that Defendant's "intentional bricking of the [Dash] constitutes an affirmative act which is an unconscionable commercial practice[.]" FAC ¶ 71; *see also* Pl.'s Opp. at 15 ("[T]he deliberate disabling and destruction of the [Dash] rises to a different level, namely that of an unconscionable commercial practice.").[10] As such, it appears

---

[10] Of note, the CFA prohibits "unconscionable commercial practices" that are "*in connection with the sale or advertisement* of any merchandise or real estate[.]" N.J.S.A. 56:8-2 (emphasis added). To the extent Plaintiff is arguing that Defendant's affirmative act of bricking of the Dash *is* the

13

that Plaintiff's second theory is that Defendant's *actual bricking* of the Dash was the "unconscionable commercial practice." Under either theory, however, Plaintiff has not sufficiently pled facts from which the Court can reasonably infer that Defendant engaged in an "unconscionable commercial practice."

As to Plaintiff's first theory, Plaintiff does not plead plausible facts to support his claim that Defendant has a "history of repeatedly" bricking its products without disclosing its penchant for doing so. Plaintiff's theory is entirely premised on a single update issued by one of Defendant's affiliates regarding a different product *seven years* before Defendant bricked the Plaintiff's Dashes. However, that different product's software update merely disabled certain features of that product, which was still otherwise functional after its update. Plaintiff, moreover, does not allege the reason for the other product's software update, much less that the reason was to end support for an unprofitable product. Accordingly, Plaintiff's allegations as to his first theory are insufficient to state a claim for relief that is plausible on its face.

As to Plaintiff's second theory, Plaintiff claims that the intentional bricking of the Dash, in and of itself, amounts to an unconscionable commercial practice. FAC ¶ 71 ("[T]he intentional bricking of the [Dash] constitutes an affirmative act which is an unconscionable commercial practice[.]"); *see also* Pl.'s Opp. at 15 ("[T]he deliberate disabling and destruction of the [Dash] rises to a different level, namely that of an unconscionable commercial practice."). However, Plaintiff fails to provide sufficient factual allegations from which the Court could infer that such conduct constituted a "lack of good faith, honesty in fact and observance of fair dealing.'" *Cox*,

---

unconscionable commercial practice, *see* FAC ¶ 71, Plaintiff does not explain, nor can the Court surmise, how Defendant's conduct was *in connection with the sale or advertisement* of the Dash. Rather, it appears this theory of unconscionable commercial practice is entirely premised on actions taken by Defendant years after Plaintiff first purchased his Dashes. This issue, however, was not raised by the parties, so the Court declines to address it *sua sponte*.

14

138 N.J. at 18. Even assuming, as Plaintiff alleges, that Defendant bricked the Dash because "[m]aintaining the servers needed for . . . the Dash was [no longer] economical," FAC ¶ 26, Plaintiff does not indicate how this conduct amounts to an unconscionable commercial practice. In other words, to the extent Plaintiff argues that the "unconscionable commercial practice" here was Defendant's discontinuing of the Dash's servers *because* it was no longer profitable, Plaintiff fails to provide any legal authority to support his contention that such a financial motive, alone, necessarily evinces a lack of good faith or fair dealing. Defendant replies that it is not "unconscionable" for a manufacturer to stop supporting a product, particularly when that manufacturer never promised that it would maintain the product indefinitely – and sold the product with only a one-year warranty. Def.'s Reply at 9. Plaintiff acknowledges that Defendant issued the update that disconnected the Dash from its servers *seven years* after the Dash was first released to the public. FAC ¶¶ 19, 25. Defendant points out that it continued to support the device for five more years even after making the Dash's newest model available to a liquidator. Def.'s Br. at 13.[11] In short, because Plaintiff has not cited any legal authority which supports a finding of unconscionable commercial practice in light of his allegations, the Court finds that the allegations are insufficient.

Plaintiff's opposition does cite to several cases, but they are inapposite. Plaintiff argues that the instance case is akin to *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442, 2009

---

[11] Plaintiff alleges that in April 2010 the Dash's (model HID-C10) listing price was $199. FAC ¶ 19. In 2011, Plaintiff purchased two of those Dash units from Amazon.com for $104.96 each. *Id.* ¶ 30. "Less than a year later," Plaintiff purchased the newest version of the Dash (HID-B70) from the liquidation site Woot.com for $79.99. *Id.* ¶ 34. Plaintiff does not indicate the precise year that he bought his Dash from Woot.com, but it appears to the Court that Plaintiff did so in approximately 2012.

WL 44748 (D.N.J. Jan. 6, 2009). In *Kalow*, however, the plaintiff's CFA claim was premised on a knowing omission, not an unconscionable commercial practice. Plaintiff also cites to *Katz v. Live Nation, Inc.*, for the proposition that claims for "unconscionable commercial practices" may be brought as stand-alone claims under the CFA without the need to "allege an affirmative fraudulent statement, representation, or omission by the defendant." No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010); *see also* Pl.'s Opp. at 14. While the Court agrees, this does not aid Plaintiff's argument that Defendant's bricking of the Dash *was* an "unconscionable commercial practice." Likewise, the other cases to which Plaintiff cites – and the propositions for which Plaintiff cites them – do not aid the Court in determining whether Plaintiff has sufficiently alleged plausible facts demonstrating that Defendant, in fact, engaged in an "unconscionable commercial practice."

Without more, Defendant's discontinuing of the Dash's servers seven years after the product's release does not on its face plausibly suggest an "unconscionable commercial practice." *See Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 416 (D.N.J. 2014) (finding that manufacturer did not engage in "unconscionable commercial practice" by charging consumers a higher price for one over-the-counter drug than for a another over-the-counter drug, despite the fact that both drugs were pharmacologically identical, and noting that "while [such] conduct may be strategic, not all such behavior is proscribed by law"). Here, Plaintiff has not alleged sufficient facts, or provided relevant case law, from which the Court could reasonably infer that Defendant's conduct constituted a "lack of 'good faith, honesty in fact and observance of fair dealing.'" *Cox*, 138 N.J. at 18 (quoting *Kugler*, 58 N.J. at 544); *see also Yingst*, 63 F. Supp. 3d at 416 (citing Black's Law Dictionary (8th ed. 2004), defining "unconscionable act" as one "affronting the sense of justice,

16

decency, or reasonableness"). As such, Plaintiff has not pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In sum, Plaintiff has not sufficiently plead an unlawful practice under any of his theories, and therefore, the Court dismisses Count Two. Nonetheless, Plaintiff's Amended Complaint does provide factual information that gives the Court pause with respect to Plaintiff's "unconscionable commercial practice" theory. While the factual content, as pled, is not sufficient for the Court to draw the inference that Defendant's intentional bricking of the Dash amounted to an "unconscionable commercial practice" under the CFA, the Court can reasonably foresee circumstances in which Plaintiff *may* be able to plead additional facts from which the Court could draw such an inference. Of course, if Plaintiff had access to this information, he should have included it in his FAC. Nonetheless, the Court will grant Plaintiff one last opportunity to amend his complaint. Should Plaintiff choose to do so, he must clearly delineate his theories as to Defendant's alleged unlawful conduct under the CFA.

### IV. CONCLUSION

In sum, the Court **GRANTS** Defendant's motion to dismiss, D.E. 32. Plaintiff has thirty (30) days to file a Second Amended Complaint, if he so chooses, consistent with this Opinion. If Plaintiff fails to do so, then the dismissal of Count Two in the FAC will be with prejudice. An appropriate Order accompanies this Opinion.

Date: March 5th, 2020

John Michael Vazquez, U.S.D.J.